CERTIFIED COPY

A True Copy
Teste:

*[signature]*

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

*In the*

# United States Court of Appeals

## For the Seventh Circuit

---

No. 17-2685

ANTHONY E. SIMPKINS,

*Plaintiff-Appellant,*

*v.*

DUPAGE HOUSING AUTHORITY, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 9103 — **Charles R. Norgle**, *Judge.*

---

ARGUED MARCH 27, 2018 — DECIDED JUNE 20, 2018

---

Before WOOD, *Chief Judge,* and BAUER and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Anthony Simpkins sued the DuPage Housing Authority and DHA Management, Inc. (collectively, DHA), alleging various violations of the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL), the Illinois Employee Classification Act (IECA), the Illinois

Prevailing Wage Act (IPWA), and the Family and Medical Leave Act (FMLA). On cross-motions for summary judgment, the district court held that Simpkins was not an employee of DHA, but rather an independent contractor. Therefore, it granted summary judgment in favor of DHA as to the federal claims and relinquished jurisdiction over the state law claims. Because there are genuine disputes of fact that are material to the determination of Simpkins' employment status, we reverse and remand.

## I. BACKGROUND

Simpkins began working for DHA in November 2009. He and DHA entered into an agreement titled "Independent Contractor Agreement," with an expected completion date of June 2011. The contract stated that his duties were to include "general labor as needed" to complete the rehabilitation of vacant properties that were part of DHA's Neighborhood Stabilization Program to make them suitable for new occupants. In that role, he performed carpentry, maintenance, and handyman work such as demolition, remodeling, removing fixtures, and discarding trash.

In 2011, the rehab work slowed down and Simpkins began working primarily at Ogden Manor, a townhome community for which DHA served as the on-site management. He performed much of the same work, but eventually focused specifically on maintenance work. Ogden Manor's property manager and maintenance supervisor, who were DHA employees, gave Simpkins his list of job duties and prioritized the order in which he needed to complete those tasks.

No. 17-2685                                                                      3

In May 2012, Simpkins and DHA entered into another "Independent Contractor Agreement." This agreement described the scope of work as "general labor for maintenance" at Ogden Manor. The agreement originally stated that the expected completion date for that work was July 2012. However, that date was later crossed out by hand and replaced with "To Be Determined." Simpkins continued to work at Ogden Manor until May 2015.

From November 2009 through May 2015, Simpkins worked full-time and exclusively for DHA. Pursuant to DHA's instructions, Simpkins reported his hours by submitting invoices, and he was paid bi-weekly via paper check. DHA issued Simpkins 1099-MISC tax forms to file his taxes, while others whom DHA considered employees were issued W-2 forms. Simpkins was aware that DHA considered him an independent contractor, and he repeatedly requested, to no avail, that his supervisors convert him to a regular employee. DHA did not provide him with pension, insurance, or other similar fringe benefits.

In May 2015, Simpkins was injured in a car accident, after which his relationship with DHA ended. He filed this lawsuit in October 2015, claiming that DHA had repeatedly failed to pay him overtime, and that DHA was required to provide him with certain disability benefits. The parties filed cross-motions for summary judgment. The district court granted DHA's motion and ruled that Simpkins was not an employee of DHA under the FLSA. Accordingly, it granted DHA's motion as to

the federal claims[1] and relinquished jurisdiction of the state law claims.

## II. DISCUSSION

### A. Legal Standards

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, "[t]he court should neither look the other way to ignore genuine issues of material fact, nor strain to find material fact issues where there are none." *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) (internal quotation marks and citation omitted).

"The Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA." *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). The conclusion of whether an individual qualifies as an employee under the Act requires an examination of the totality of the circumstances, with the ultimate goal of determining the "economic reality of the working relationship." *Id.* at 808 (citations omitted). The FLSA considers employees those "who as a matter of economic reality are dependent upon the

---

[1] In his response to DHA's motion for summary judgment, Simpkins conceded that dismissal of his FMLA claim was appropriate. Accordingly, the only question before us now is whether the court was correct to grant summary judgment on his FLSA claim.

business to which they render service." *Lauritzen*, 835 F.2d at 1534 (internal quotation marks and citation omitted).

In *Lauritzen*, we compiled a list of factors "to assist in determining the true nature of the relationship," while explaining that "no criterion is by itself, or by its absence, dispositive or controlling." *Id.* at 1534. It is also important to note that the *Lauritzen* factors are not the exclusive means by which the ultimate determination can be made. *See, e.g., Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 291 (7th Cir. 2016) ("We have declined to apply mulitfactor tests in the employment setting when they 'fail to capture the true nature of the relationship' between the alleged employee and the alleged employer.") (quoting *Vanskike*, 974 F.2d at 809). Instead, the inquiry is aimed at determining the economic reality of the working relationship by examining the totality of the circumstances. *Id.* at 290.

The posture of this case, as well as the parties' citations in support of their preferred standards of review, present an opportunity for clarification of those standards, which is both long overdue and critical to the result here. In *Lauritzen*, we explained that "the determination of workers' status is a legal rather than a factual one," meaning it is subject to *de novo* review. 835 F.2d at 1535. We also noted, however, that the underlying factual findings that lead to that legal determination are to be reviewed for clear error. *Id.*

To explain that distinction, we cited the Fifth Circuit's decision in *Brock v. Mr. W Fireworks*, 814 F.2d 1042 (5th Cir. 1987). *See Lauritzen*, 835 F.2d at 1535. In that case, after outlining a similar multifactor test, the Fifth Circuit explained that

Case: 1:15-cv-09103 Document #: 83 Filed: 07/12/18 Page 6 of 10 PageID #:1260

there were three types of findings relevant to the determination of employment status: 1) "historical findings of fact" that underlie a finding regarding the relevant factors; 2) findings on the factors themselves, which are based on inferences drawn from the historical facts; and 3) the ultimate legal conclusion based on those two types of factual findings. *Mr. W Fireworks*, 814 F.2d at 1044–45. The court concluded that because the first two types of findings were factual in nature, they are subject to clear error review, while the third is subject to *de novo* review. *Id.*

That analysis, however, has limited applicability in the context of reviewing a ruling on a motion for summary judgment. *Mr. W Fireworks* was before the Fifth Circuit following a three-day bench trial, during which the district court acted as the trier of fact and resolved all disputed issues. *Id.* at 1043. By contrast, on summary judgment, a district court makes no factual findings of its own. Instead, it is required to construe the facts in the light most favorable to the nonmoving party and identify, but not resolve, material factual disputes. Accordingly, a ruling on summary judgment does not present the same types of factual findings to which the court was referring in *Mr. W Fireworks*.

To summarize then, our task here is to determine whether the district court was correct in concluding that there were no disputes of fact material to the determination of Simpkins' employment status, and that DHA was entitled to judgment as a matter of law. We review that conclusion *de novo*, and because the court granted DHA's motion, we review the facts in the light most favorable to Simpkins. *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016).

No. 17-2685                                                    7

## B. Disputed Factual Issues

The record in this case abounds with factual disputes that are material to the determination of the true relationship between Simpkins and DHA. As we have noted, none of the individual factors set forth in *Lauritzen* and its progeny are dispositive of the ultimate determination, which is the economic reality of the relationship. In light of that, the discussion that follows should not be construed as exhaustive of either the factors that may be relevant to determining the parties' true economic relationship or the specific factual issues that remain unresolved.

The first factor the district court analyzed in this case is the nature and degree of control the putative employer exercised over the manner in which the putative employee performed his work. *See Lauritzen*, 835 F.2d at 1535. On this point, the record presents numerous competing facts. For example, DHA assigned Simpkins to work specifically at the Ogden location and set his schedule. Simpkins states that he regularly worked from 8:30 a.m. to 4:30 p.m., but the parties dispute whether DHA required him to work those set hours. Additionally, DHA assigned Simpkins specific projects and dictated the order in which he was to complete them. DHA argues that Simpkins had the autonomy to determine the manner in which those tasks were completed after they were assigned. However, the extent and effect of that autonomy remains in dispute, particularly in light of the other ways in which DHA was in control of Simpkins' work and employment. Considering those competing inferences in the light most favorable to Simpkins, a reasonable trier of fact could find that DHA's control over

Simpkins weighs in favor of a typical employer-employee relationship.

There are also disputes in the record when it comes to Simpkins' investment in the tools, equipment, and materials required to perform his work. *See id*. (listing "the alleged employee's investment in equipment or materials required for his task" as a factor to be considered). Simpkins maintains that DHA purchased virtually everything he required, at times going so far as to say that, after 2009, DHA supplied 99% of the tools and 100% of the materials he used. He also cites deposition testimony from DHA's executive director explaining that DHA did not expect Simpkins to purchase his own materials. However, as DHA points out, some of Simpkins' allegations on this point are contradicted by his tax returns, in which he itemized certain purchases of materials in order to receive deductions. Clearly, there is a factual dispute as to the origins of the tools, materials, and equipment Simpkins regularly used on the job, and while not dispositive by itself, such a dispute is certainly material to the ultimate question.

Another factor the district court looked to is whether specialized skill was required to complete the work. *See id*. (listing "whether the service rendered requires a special skill" as a relevant factor). On this point, the district court correctly found that the record presents competing facts. Simpkins notes that he never held any specialized licenses and only performed rudimentary tasks that did not require special skill. He also points out that DHA often hired other individuals to do specialized work that he was not qualified to do. On the other hand, DHA notes that, prior to working for DHA, Simpkins had already acquired certain carpentry skills that he needed to

No. 17-2685                                                                 9

perform much of the rehab work he did. Clearly, whether Simpkins had specialized skills, as well as the extent to which he employed them in performing his work, are issues that remain in dispute.

Finally, we turn to the factual ambiguities regarding the existence and nature of the parties' contracts. The district court pointed out that the contracts were labeled "Independent Contractor Agreement" and found that Simpkins' compliance with certain material terms of those contracts indicated his understanding that he was, in fact, an independent contractor. For example, the court noted that the contracts required Simpkins to obtain his own worker's compensation and liability insurance coverage, which he did until January 2012. It did not, however, address the impact, if any, of the fact that after that date, Simpkins did not have any such coverage of his own, despite signing another contract and continuing to work at DHA for three more years. The court's opinion also leaves unanswered the question of how long and to what extent the contracts actually governed the parties' relationship. The second contract stated that its expected completion date was July 2012, which was then crossed out in favor of "To Be Determined." Simpkins continued to work at DHA until May 2015, and it is unclear whether the parties intended that agreement to be open ended or when, if ever, a completion date was determined and reached. Clearly, there are material issues of fact as to the nature of these contracts that must be resolved before the court can properly determine the impact they had on the overall economic reality.

In sum, the summary judgment record presents numerous factual disputes that are material to the determination of the

true economic relationship between Simpkins and DHA. Because those disputes are not appropriate for resolution at the summary judgment stage, the court erred in concluding that Simpkins was not an employee under the FLSA as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment is vacated, the dismissed state law claims are reinstated, and the case is remanded for a trial to conclusively establish the facts surrounding the parties' employment relationship.