**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION**

ANTHONY SIMPKINS,

               Plaintiff,

v.

DUPAGE HOUSING AUTHORITY and
DHA MANAGEMENT INC.,

               Defendants.

Case No. 1:15-CV-9103

Judge Charles R. Norgle

## ORDER

Defendants' motion for partial summary judgment [98] is granted in part and denied in part. Defendants' motion to for leave to file excess pages for reply brief [107] is granted. Plaintiff's motion for partial summary judgment [86] is denied.

## MEMORANDUM OPINION

Plaintiff Anthony Simpkins ("Plaintiff") sued Defendants DuPage Housing Authority ("DHA") and DHA Management, Inc. ("DHA Management") (collectively, "Defendants") for several employment law violations. Plaintiff currently presses four claims against Defendants, alleging violations of: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for failure to pay overtime wages; (2) the Illinois Minimum Wage Law ("IMWL"), 820 ILCS l05/1 *et seq.*, for failing to pay overtime wages at the statutorily required rate; (3) the Illinois Employee Classification Act ("IECA"), 820 ILCS 185/1 *et seq.*, for erroneously failing to classify Plaintiff as an employee rather than an independent contractor; and (4) the Illinois Prevailing Wage Act ("IPWA"), 820 ILCS 130 *et seq.*, for failing to compensate Plaintiff at no less than the prevailing hourly wage for the duration of Plaintiff's work for Defendants. Before the Court now are cross-motions for partial summary judgment that deal only with the IECA and IPWA claims.

Before delving into the substance of the cross-motions, it is helpful to consider the somewhat circuitous path that has led to this point of the litigation. In August 2017, this Court

granted summary judgment in favor of Defendants on the FLSA claim and relinquished jurisdiction as to the pendent state law claims. See Dkt. 65. The Court specifically held as a matter of law that Plaintiff could not be considered an employee (and rather was an independent contractor) for purposes of the FLSA. Plaintiff appealed, and the Seventh Circuit reversed and remanded. See Simpkins v. DuPage Housing Authority, 893 F.3d 962, 967 (7th Cir. 2017). The Seventh Circuit held that genuine disputes of fact exist that are material to the determination of Simpkins's employment status (for purposes of the FLSA). The Seventh Circuit outlined various factual disputes in the record, including in relation to Plaintiff's alleged schedule, his investment in necessary tools, and the nature and length of the contractual relationship between the parties. Thus, and needless to say, this case will proceed on the FLSA claim regardless of the outcome of this motion. The Seventh Circuit also reinstated the state law claims without any discussion as to the merits of those claims.

The parties now move forward on cross-motions for partial summary judgment related to those state law claims. Plaintiff argues that, as a matter of law, the Court should hold that Simpkins is an employee for purposes of the IECA. Plaintiff specifically argues that the IECA has a more expansive definition of "employee" than the FLSA, meaning this Court can make that determination yet remain consistent with the Seventh Circuit's findings related to the various material factual disputes that directly appertain to Plaintiff's status as an "employee" under the FLSA. Defendants, on the other hand, argue that they are shielded from liability under the IECA because of its status as a political subdivision of the State of Illinois and that the IPWA does not create a private right of action for individuals in Plaintiff's shoes.

The Court agrees with Defendants as to the IECA claim, meaning Plaintiff's argument as to his status as an employee for purposes of the IECA is denied. The Court disagrees with respect to the IPWA claim, and if Plaintiff is in fact an independent contractor, Plaintiff is entitled to

attempt to prove an IPWA violation as an alternative to his FLSA claim. As such, Plaintiff's motion for partial summary judgment is denied, and Defendants' motion for partial summary judgment is granted in part and denied in part for the following reasons.

## I. BACKGROUND

The facts in this case have been well-laid out by two orders of this Court and in one published Seventh Circuit opinion. See Dkts. 63, 66, 83. As such, and because the resolution of the issues relevant to the present motion are nearly-purely legal, as opposed to factual, in nature, this opinion provides only a high-level recitation of the general facts of the case, drawn heavily from the Seventh Circuit opinion.

Plaintiff began working as a handyman for DHA in November 2009 under an agreement titled "Independent Contractor Agreement" and performed general labor as needed to complete the rehabilitation of vacant properties. He performed carpentry, maintenance, and handyman works such as demolition, remodeling, removing fixtures, and discarding trash in that role.

In 2011, the rehab work slowed down and Simpkins began working primarily at Ogden Manor, a townhome community for which DHA served as the on-site management. He performed much of the same work, but eventually focused specifically on maintenance work. Ogden Manor's property manager and maintenance supervisor, who were DHA employees, gave Simpkins his list of job duties and prioritized the order in which he needed to complete those tasks.

In May 2012, Simpkins and DHA entered into another "Independent Contractor Agreement." This agreement described the scope of work as "general labor for maintenance" at Ogden Manor. The agreement originally stated that the expected completion date for that work was July 2012. However, that date was later crossed out by hand and replaced with "To Be Determined." Simpkins continued to work at Ogden Manor until May 2015.

From November 2009 through May 2015, Simpkins worked full-time and exclusively for DHA. Pursuant to DHA's instructions, Simpkins reported his hours by submitting invoices, and he was paid bi-weekly via paper check. DHA issued Simpkins 1099-MISC tax forms to file his taxes, while others whom DHA considered employees were issued W-2 forms. Simpkins was aware that DHA considered him an independent contractor, and he repeatedly requested, to no avail, that his supervisors convert him to a regular employee. DHA did not provide him with pension, insurance, or other similar fringe benefits.

In May 2015, Simpkins was injured in a car accident, after which his relationship with DHA ended. He filed this lawsuit in October 2015, claiming that DHA had repeatedly failed to pay him overtime, and that DHA was required to provide him with certain disability benefits. The parties filed cross-motions for summary judgment. As noted, this Court entered judgment in favor of Defendants on the FLSA claim, which the Seventh Circuit reversed. The Court now considers the cross-motions for summary judgment dealing with Counts 3 and 4—the IECA and IPWA claims respectively.

As to the DHA itself, it is a municipal corporation created pursuant to the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. Ann. 10/1 *et seq*., and is charged with administering various federal and state housing programs. The President of DuPage County's Board of Commissioners appoints DHA's Board of Commissioners. DHA is funded by grants and subsidies from government bodies, including the Department of Housing and Urban Development,

DHA Management was a non-profit subsidiary of DHA designated as "the on-site management entity for Ogden Manor." Dkt. 100, at 2. DHA Management received its operating income from government grants. It was completely controlled by DHA. DHA's Executive Director and Board members held those same positions for DHA Management. DHA Management's assets and financial activity were rolled into DHA's financial statements for public

4

reporting. DHA Management did not have its own office, and its registered address was the same address as DHA's office.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law. Selective Ins. Co. of S.C. v. Target Corp., 845 F.3d 263,265 (7th Cir. 2016), as amended (Jan. 25, 2017). Where parties file cross-motions for summary judgment, the standard of decision does not change. Id. The Court "take[s] the motions one at a time," Black Earth Meat Mkt., LLC v. Vill. of Black Earth, 834 F.3d 841,847 (7th Cir. 2016), and "construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." Target Corp., 845 F.3d at 265 (internal quotation and citation omitted).

### B. The IECA Claim and Defendants' Status as a Political Subdivision of the State

Turning first to Defendants' argument as to the IECA, Defendants urge that that they are exempt from liability under the statute's plain language. The Court agrees. The operative provision of the IECA is within the definitions section of the statute, at 820 ILCS 185/60. There, "Employer" is defined as follows:

> "Employer" means any contractor that employs individuals deemed employees under Section 10 of this Act; however, "employer" does not include (i) the State of Illinois or its officers, agencies, or political subdivisions or (ii) the federal government.

820 ILCS 185/60. The question, then, is whether DHA and DHA Management fall within the exclusion in subdivision (i) as "the state of Illinois or its officers, agencies, or political subdivisions."

The parties have cited no controlling authority that directly addresses whether a housing authority, like DHA, or a subsidiary of such an entity, like DHA Management, is exempt under the statute. The Court likewise has found no such authority. Defendants argue the Court should treat this language as analogous to that in other statutes that use identical language, and which courts, in other statutory contexts, have found housing authorities (though not the DuPage Housing Authority) to be "political subdivision(s)" of the State of Illinois.

Courts have fashioned a test, in those other contexts, as to whether an entity is can be considered a "political subdivision" for purposes of exemption from liability under various statutes. In the context of the Labor Management Relations Act, 29 U.S.C. § 185, "[T]he general test for determining whether an employer is an exempt political subdivision is whether it was "'(1) created directly by the state, so as to constitute a [department] or administrative [arm] of the government, or (2) [is] administered by individuals who are responsible to public officials or to the general electorate.'" N.L.R.B. v. Parents and Friends of Specialized Living Center, 879 F.2d 1442, 1448 (7th Cir.1989) (quoting N.L.R.B. v. Natural Gas Utility Dist. of Hawkins County, 402 U.S. 600, 604–05, 91 S.Ct. 1746 (1971))." Brooks v. Chicago Hous. Auth., No. 89 C 9304, 1990 WL 103572, at *1 (N.D. Ill. July 5, 1990).

One other court similarly applied this test when considering an exemption for purposes of the Employee Retirement Income Security Act ("ERISA") in Issa v. Chicago Hous. Auth., No. 01 C 9439, 2002 WL 909279, at *3 (N.D. Ill. May 6, 2002).

In each of those cases, the court held that the Chicago Housing Authority, which, like the DuPage Housing Authority, was created pursuant to the Illinois Housing Act, was a political subdivision for purposes of those statutes' exemptions. Moreover, at least one Illinois appellate court appears to have taken for granted that the Chicago Housing Authority was a political subdivision of Illinois—there for purposes of the requirement of a contractor bond. See Chicago

Hous. Auth. for Use of Gen. Bronze Corp. v. U.S. Fid. & Guar. Co., 49 Ill. App. 2d 407, 410, 199
N.E.2d 217, 219 (Ill. App. Ct. 1964).

 With respect to the DuPage Housing Authority and for purposes of the IECA, the test
outlined above is an apt mechanism to consider the "political subdivision" exemption that is both
fair and promotes consistency across the law.  In applying this test, it is clear to the Court that the
DHA should be considered such a political subdivision because it "is administered by individuals
who are responsible to public officials[.]"  As noted above, the DHA's Board of Commissioners
is appointed by the President of DuPage County's Board of Commissioners.  This satisfies the
"political subdivision" test laid out above.  Moreover, as a practical matter, the DHA serves a
governmental function through its administration of state and federal housing programs, which are
funded through public money.  It is also structured as a municipal corporation and, as noted above,
was created pursuant to the Illinois Housing Act.

 Plaintiff makes much ado in its briefing regarding a deposition response of DHA's 30(b)(6)
witness Kenneth Coles, who, when asked whether DHA is considered a public entity, responded
"no."  Dkt. 106, at 1.  Even so, the answer of this witness is not binding on this Court, which has
the benefit of briefing and research on this complex legal issue.  The witness's absence of
familiarity as to the subtleties of the "political subdivision" test and, perhaps (as Defendants argue)
his confusion by the poorly-phrased broad question asked by Plaintiff's counsel, is not dispositive
on this issue, and Cole's opinion of what unidentified persons or entities consider the DHA is of
no value.

 Given these facts, and its similarity to the Chicago Housing Authority, the Court holds as
a matter of law that the DuPage Housing Authority is a "political subdivision" of the State of
Illinois for purposes of the IECA and that as such it is exempt from liability under the IECA given

the definitional exemption quoted above. As such, Defendant DHA's motion for summary judgment as to the IECA claim, Count 3, is granted.

Turning to the applicability of the IECA to DHA Management, the Court holds that DHA Management is encompassed by the DHA exemption. DHA Management is a wholly-owned subsidiary completely controlled by DHA, with the same Executive Board and Board members as DHA. The Court is persuaded by the reasoning in Barnes v. Chicago Housing Authority, 326 Ill. App. 3d 710 (1st Dist. 2001) and Smith v. Northern Ill. Regional Commuter Railroad Corp., 210 Ill. App. 3d 223 (1st Dist. 1991) and its applicability in the present situation. As the Seventh Circuit in Amoco Corp. v. C.I.R., observed, "the Supreme Court has eschewed bright-line rules in favor of a more functional approach" when it comes to considering state-owned enterprises as the functional equivalents as the states which own them. 138 F.3d 1139 (1998). Thus, summary judgment is likewise granted as to DHA Management as to the IECA claim.

### B. The IPWA Claim and Plaintiff's Potential Entitlement to Contractor Relief

With respect to the IPWA claim, Plaintiff has conceded that if he was an employee of DHA, he would not be entitled to relief under the IPWA, which (as Illinois case law makes clear) does not require public bodies to pay their own employees the prevailing wage under the Act. Plaintiff argues, however, that if he was in fact an independent contractor, Defendants should have been paying him the prevailing wage. Defendants counter by arguing that, in fact, the IPWA does not create a private cause of action in this type of scenario. The IPWA, according to Defendants, only provides a cause of action for employees against their (non-public body) employers—the contractors or subcontractors they work for.

To support this proposition, Defendants point to the following language at 820 ILCS 130/11:

> Any laborer, worker or mechanic employed by the contractor or by
> any sub-contractor under him who is paid for his services in a sum
> less than the stipulated rates for work done under such contract, shall
> have a right of action for whatever difference there may be between
> the amount so paid, and the rates provided by the contract.

Defendants infer a restriction on Plaintiff from this provision—that a laborer, worker, or mechanic seeking to enforce the IPWA must be employed by a contractor and must seek remedy against that contractor (or subcontractor) itself. Defendants also cite two Illinois cases they argue stands for the proposition that a public body itself cannot be sued if it fails to pay an independent contractor the prevailing wage: Cent. Laborers' Pension Fund v. Nicholas & Associates, Inc., 2011 IL App (2d) 100125, ¶ 47 ("Under section 11, an employee or an employee representative may sue a contractor or subcontractor in state court to recover the difference between the wages paid and the 'prevailing wage' as defined in section 2."); People ex rel. Dept. of Labor v. Valdivia, 2011 IL App (2d) 100998, ¶ 13 ("The [PWA] requires both general contractors and subcontractors on public-works projects to pay the prevailing wage to their employees."). Dkt. 100, at 4.

Although Defendants have not altered these quotations, they do not stand for the broad (and supposedly obvious) restriction that Defendants claim they do. Pronouncements that certain suits may be brought against contractors and subcontractors is not the same as saying that only such suits may be brought. In fact, Illinois case law appears to suggest just the opposite. Shempf v. Chaviano, 2019 IL App (1st) 173146, ¶ 60, 126 N.E.3d 503, 514 ("Units of local government pay the wages, based on those rates. And the Prevailing Wage Act, as we've just noted, permits suits against those public bodies for underpayment of wages. 820 ILCS 130/11"). Our sister courts have similarly not read in such a restriction on the statute. E.g. Murphy v. Prof'l Transportation, Inc., No. 14-CV-378-SMY-DGW, 2017 WL 5665901, at *3 (S.D. Ill. Nov. 27, 2017) ("The IPWA provides a cause of action for any covered laborer, worker or mechanic "who is paid for his services in a sum less than the stipulated rates for work done under such contract" for the difference

there may be between the amount paid and the stipulated rate, together with costs and attorney's fees. 820 ILCS 130/11."); Madero v. Peters Eng'g, Inc., No. 12 C 50157, 2015 WL 2220727, at *1 (N.D. Ill. May 12, 2015) ("Any laborer, worker or mechanic employed by the contractor or by any sub-contractor under him who is paid for his services in a sum less than the stipulated rates for work" under a contract for public works "shall have a right of action for whatever difference there may be between the amount so paid, and the rates provided by the contract together with costs and such reasonable attorney's fees as shall be allowed by the court." 820 ILCS 130/11.)

The Court thus agrees with Plaintiff that, if the factfinder determines that Plaintiff is an independent contractor rather than an employee, Plaintiff could seek recourse under the IPWA (assuming that the other conditions necessary to be entitled to relief are met, that is, that Plaintiff was not in fact paid the prevailing wage). As such, Defendants' motion for summary judgment as to the IPWA claim is denied.

### C. Plaintiff's Motion under the IECA

Turning finally to Plaintiff's motion for summary judgment, in which Plaintiff asks to be declared an employee under the IECA as a matter of law, because the Court has held that Defendants are political subdivisions exempt from liability under the IECA, Plaintiff's motion thus is denied.

### III. CONCLUSION

In sum, judgment is entered in favor of Defendants as to Count 3 (related to the IECA) and Defendants' motion is denied as to Count 4 (the IPWA claim). In light of that ruling, Plaintiff's motion for partial summary judgment is denied in full.

IT IS SO ORDERED.

ENTER: _____

CHARLES RONALD NORGLE, Judge

DATE: September 19, 2019          United States District Court